**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 1:17-cr-00011** |
| | ) | **Judge Aleta A. Trauger** |
| **DAVID LYNN BUIE** | ) | |

## MEMORANDUM and ORDER

Defendant David Lynn Buie pleaded guilty to two charges of being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Doc. No. 22.) He objects to the Presentence Investigation Report's recommendation that he be sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). (Doc. No. 24.) The government's position is that the defendant is properly classified as an armed career criminal under the ACCA, based on having at least five qualifying prior convictions. (Doc. No. 28.)

Having considered all of the parties' arguments on this issue, the court finds, for the reasons set forth herein, that the defendant has at least three qualifying convictions and is subject to sentencing under the ACCA.

## I.      Background

Buie was indicted in August 2017 on two separate charges of being a previously convicted felon in possession of a total of four firearms. (Doc. No. 1.) The court granted Buie's Petition to Enter a Plea of Guilty to the Indictment on May 21, 2018. (Doc. No. 22.) The plea petition reflected Buie's and his attorney's understanding that Buie would be subject to a maximum sentence of ten years' imprisonment. (*Id.* at 1.)

Prior to the original date set for the sentencing hearing, the Probation Office issued the Presentence Report ("PSR") (prepared on July 20, 2018 and revised on August 16, 2018), finding that Buie had five prior predicate convictions, any three of which would be sufficient to require sentencing under the ACCA. Buie concedes that a prior conviction for voluntary manslaughter qualifies as a predicate conviction, but he argues that the other four convictions identified in the PSR do not qualify. These include two convictions for "Burglary – 1st Degree" in March 2001, a 1986 arson conviction, and a second-degree burglary conviction in 1986. He also argues that, even if the 2001 burglary convictions do qualify, they must be counted as one conviction, because the government cannot carry its burden of establishing by a preponderance of the evidence that they were "committed on occasions different from one another" as that phrase is used in the ACCA. 18 U.S.C. § 924(e)(1).

More specifically, in his Objection to Presentence Report (Doc. No. 24), the defendant argues as follows:

(1) That the 1986 conviction for second-degree burglary is not a predicate offense, because the definition of "entry" under Tennessee law does not meet the element of "entry" required by the "generic" form of burglary.

(2) Although Buie was charged with aggravated arson in 1986 under Tenn. Code Ann. § 39-3-201, he was convicted of the lesser included offense of "regular arson" under Tenn. Code Ann. § 39-3-202, pursuant to a plea agreement. According to Buie, this provision applies equally to a person "who willfully and maliciously sets fire to or burns" a structure and to a person "who aids, counsels or procures the burning" of any structure without malice or willfulness. The defendant argues that, because he pleaded guilty to a lesser included offense,

> the federal sentencing court must disregard all language in the indictment that is
> unnecessary to support the lesser offense to which the defendant pled. That is, the

> court must assume the least offensive conduct that would support a conviction for the lesser included offense. Here, the least offensive conduct that would support a conviction for the offense of regular arson is the act of aiding, counseling or procuring the burning of a structure.

(Doc. No. 24, at 5 (citing *United States v. Wells*, 473 F.3d 640, 649 (6th Cir. 2007); *United States v. Armstead*, 467 F.3d 943, 949–50 (6th Cir. 2006), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013)).) He relies for this argument on *United States v. Webb*, 217 F. Supp. 3d 381, 399 (D. Mass. 2016), a case granting a § 2255 motion for resentencing based on the court's finding that the very similar Massachusetts statute defining arson did not qualify as a predicate offense.

(3) Although Buie was initially indicted under Tenn. Code Ann. § 39-14-402 on two counts of "regular burglary" in March 2001, the judgments reflect that he was actually convicted under Tenn. Code Ann. § 39-14-403 for aggravated burglary. The defendant asserts that his two convictions under § 39-14-403 do not qualify as "generic burglaries" under the ACCA and are not ACCA predicates. (Doc. No. 24, at 2 (citing *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc)).)

(4) And finally, that the two 2001 burglary convictions should be counted as one offense, because the government cannot carry its burden of showing they were committed on different occasions.

In response, the Government argues that all five of the offenses enumerated in the PSR are qualifying convictions. It argues, in the alternative, that, if the defendant is not sentenced under the ACCA, the court should impose an upward departure under § 4A1.3 of the United States Sentencing Guidelines ("USSG") and an upward variance under § 3553(a) based on the defendant's thirteen prior felony convictions and other criminal conduct. (Doc. No. 28, at 8–10.)

## II.      The ACCA

The ACCA states, in relevant part, that any person convicted of violating § 922(g)(1) and who has three previous convictions for a "violent felony," "serious drug offense," or both, shall be imprisoned not less than fifteen years. 18 U.S.C. § 924(e)(1). The term "violent felony" is defined in pertinent part as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e)(2)(B).

This short provision, which appears plain on its face, has proved exceptionally difficult to apply in a manner consistent with due process. To determine whether a past conviction is properly characterized as one for burglary, arson, or extortion,

> courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

*Descamps v. United States*, 570 U.S. 254, 257 (2013).

The Supreme Court has also approved the "modified categorical approach," which applies only to a prior conviction for violating a "divisible statute." As the *Descamps* Court explained,

> [t]hat kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such

as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

*Descamps*, 570 U.S. at 257; *see also Shepard v. United States*, 544 U.S. 13, 25–26 (2005) (applying modified categorical approach to conviction obtained by a guilty plea).

The Supreme Court has described the modified categorical approach as a "tool" for applying the categorical approach, rather than an "exception" to the latter. The "modified" version of the standard "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's." *Descamps*, 570 U.S. at 263.

In *Descamps*, the Court reaffirmed the distinction between the two approaches. There, it was confronted with the question of whether courts may consult additional documents when a defendant was convicted under a so-called "'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense." *Id.* at 258. In other words, the question was whether courts could look at the underlying *facts* to decide whether a previous conviction was a qualifying conviction under the ACCA, when the elements of the crime as defined in the indivisible statute "fail to satisfy our categorical test." *Id.* The Court's answer to that question was "no." *See id.* ("[W]e hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.").

The defendant in *Descamps* had previously been convicted of burglary under California law. California's burglary statute was broader than the "generic" form of burglary insofar as it did not require unlawful entry into a building, that is, "breaking and entering." Rather, it required

only entry into certain locations "within intent to commit grand or petit larceny or any felony." Because it did not require unlawful entry, the statute was broad enough, for example, to cover shoplifting during normal business hours. The Court held that, "in sweeping so widely, the state law goes beyond the normal, 'generic' definition of burglary." Because the statute was merely overly broad, rather than divisible, the Court held that the district court had erred in considering the underlying plea colloquy, in which the defendant admitted to breaking and entering into a grocery store, to determine that he had committed a generic form of burglary and, thus, had incorrectly held that the conviction qualified as a predicate burglary under the ACCA. *Id.* at 264–65.

Even after *Descamps*' supposed clarification of the distinction between divisible and indivisible statutes, the lower courts have still struggled to apply the ACCA consistently. In 2016, the Court issued *United States v. Mathis*, 136 S. Ct. 2243 (2016), which was intended to provide clarity but arguably had the effect of further muddying the waters. *See* Weber, Zachary J., "*Mathis v. United States*: A Repeated Request for Revision of the Armed Career Criminal Act," 85 U. Cin. L. Rev. 1235, 1235 (April 2018) ("Regrettably for Congress, the language of the ACCA has caused ample confusion for courts. Early Supreme Court interpretations of the Act struggled to apply its sentence enhancement fairly and consistently. More recently, Court decisions have landed serious blows to effective application of the ACCA, with M*athis v. United States*, possibly being the knockout punch." (footnotes omitted)).

In *Mathis*, the Court held that the defendant's prior convictions for burglary under Iowa law did not qualify as ACCA predicates. It first determined that the statute in question was indivisible. The burglary statute prohibited unlawful entry of an "occupied structure" with intent to commit a felony, assault, or theft therein. Iowa Code § 713.1. A separate statute defined

"occupied structure" as "any building, structure, . . . vehicle, or similar place." Iowa Code § 791.12. The district court and the Eighth Circuit held that the statutory scheme was divisible and, therefore, that the modified categorical approach was available to assist the court in determining whether Mathis's conviction fell within the purview of the ACCA. That is, the Eighth Circuit approved the district court's decision to look at a limited set of underlying documents to determine whether the defendant had been convicted of entering a building or merely a vehicle. The Eighth Circuit looked at *Descamps* and decided that that opinion had eliminated the means/elements distinction and that any disjunctive list within a criminal statute made the statute divisible. *United States v. Mathis*, 786 F.3d 1068, 1074–75 (8th Cir. 2015), *rev'd*, *Mathis*, 136 S. Ct. at 2243.

The Supreme Court reversed, reaffirming that "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense" and that "[h]ow a given defendant actually perpetrated the crime . . . makes no difference; . . . the mismatch of elements saves [him] from an ACCA sentence." *Mathis*, 136 S. Ct. at 2251. The Court also drew a distinction between the *elements* of an offense and the *means* of satisfying one of the elements. It held that the existence of a disjunctive list "gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition." *Id.*

## III.     Analysis of the Defendant's Prior Convictions

### A.     1986 Second-Degree Burglary Conviction

Following *Descamps* and *Mathis*, the Sixth Circuit, applying the categorical approach, held that Tennessee's current aggravated burglary statute, Tenn. Code Ann. § 39-14-403, defines burglary more broadly than the "generic" form of burglary and, as a result, does not qualify as a

predicate conviction under the ACCA. *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (*en banc*), *cert. granted*, 138 S. Ct. 1592 (2018).[1]

However, prior to *Stitt*, the Sixth Circuit had expressly held that a conviction for second-degree burglary under Tennessee's statute in effect prior to November 1989—that is, the statute under which Buie was convicted in 1986—did qualify as a violent felony for purposes of the ACCA. *United States v. Jones*, 673 F.3d 497, 504 (6th Cir. 2012). The *Jones* court stated:

> Burglary is an offense enumerated in clause (ii) of the "violent felony" definition. 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court, however, has read this enumerated example to mean a "generic burglary," which the Court defined as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.". . . In 1986, the Tennessee second degree burglary statute defined "burglary in the second degree" as "the breaking and entering into a dwelling house or any other house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging . . . with the intent to commit a felony." Tenn. Code Ann. § 39-3-403 (1982) (repealed 1989). . . . The pre–1989 statute was at least as narrow as the [Supreme Court's] definition of generic burglary, because it applied only to dwellings and occupied buildings. So the statute under which Defendant was convicted was a generic burglary statute. Because Tennessee's second degree burglary statute fits within the enumerated offenses in § 924(e)(2)(B)(ii), Defendant's burglary conviction counts as a "violent felony."

*Id.* at 505 (quoting *Taylor*, 495 U.S. at 599).

*Stitt* did not concern Tennessee's pre-November 1989 burglary statute and therefore did

---

[1] To reach that conclusion, the Sixth Circuit noted that Tennessee's current aggravated burglary statute pertains to burglary of a habitation. "Habitation" is defined by statute to include "any structure . . . which is designed or adapted for the overnight accommodation of persons," including "mobile homes, trailers, and tents," as well as any "self-propelled vehicle. *Id.* § 39-14-401(1)(A). The generic form of burglary, as defined by the Supreme Court, means the "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). The Supreme Court has held that vehicles and movable enclosures, such as tents, boats, and vehicles, fall outside the scope of "buildings" and "structures." *Id.* Because Tennessee's statute included "mobile homes, trailers, and tents," as well as any "self-propelled vehicle" within the definition of "habitation," "Tennessee's aggravated-burglary statute includes exactly the kinds of vehicles and movable enclosures that the Court excludes from generic burglary," even though it pertained only to such vehicles that are "designed or adapted" for overnight accommodations. *Stitt*, 860 F.3d at 858.

not affect the outcome in *Jones*. The defendant here nonetheless argues that this court should disregard *Jones* and find that his 1986 conviction for second-degree burglary does not qualify as a predicate offense under the ACCA, because *Jones* "does not address a valid argument as to whether a pre-1989 Tennessee second-degree burglary constitutes a generic burglary." (Doc. No. 24, at 7.) The defendant's novel argument is that Tennessee courts have long construed the definition of "entering" as used in the statute so broadly that a person could be convicted based upon "the slightest penetration of the building by any part of a person's body, such as a hand or finger o*r by an instrument held in the hand when it was done with the intent to commit a felony*." (Doc. No. 24, at 8 (quoting *State v. Brummitt*, [No number in original] 1988 Tenn. Crim. App. LEXIS 360, at *6 (Tenn. Crim. App. May 25, 1988) (emphasis added by the defendant)); *see also State v. Crow*, 517 S.W.2d 753, 755 (Tenn. 1974) (holding that the element of entry was satisfied in a third-degree burglary case, where the defendant had either "broke[n] the glass and split the burlap with the knife, tire tool or screw driver, and thus entered the business house with an instrument, and/or that he reached his gloved hand through the burlap in an effort to find a flip lock that would admit him to the premises").

The defendant argues that the Tennessee courts' broad construction of the term "entry"—to include "entry" by an instrument for the purpose of committing a felony—fails to meet the "more significant entry" required by the Supreme Court's definition of "generic burglary." (Doc. No. 24, at 8.) The defendant suggests that the parsing of state common law interpretations of the statute is required by *Taylor*. Citing a 2003 treatise, Wayne LaFave, *Substantive Criminal Law* (2003), which is also referenced repeatedly in *Taylor*, the defendant argues that,

> while the momentary entry of a building by the defendant's hand in an effort to enter suffices to count as an "entry," the mere use of an instrument to attempt to make entry does not, even if the instrument breaks the plane of the structure. Wayne LaFave, Substantive Criminal Law § 21.1(b) (2003). Professor LaFave

explains as follows[:]

> If the actor instead used some instrument which protruded into the structure, no entry occurred unless he was simultaneously using the instrument to achieve his felonious purpose. Thus there was no entry where an instrument was used to pry open the building, even though it protruded into the structure; but if the actor was also using the instrument to reach some property therein, then it constituted an entry. *Id.* Since the *Taylor* Court intended to adopt the generic meaning of burglary, it adopted the view that an entry must be made by the defendant himself or, at a minimum, by an instrument that is being used to take some property therein, *i.e.*, a coat hanger used to snag the desired object.

(Doc. No. 24, at 8–9.)

The defendant's argument finds no purchase, largely because Tennessee is not alone in defining "entry" broadly. *See, e.g.*, *Magness v. Superior Court*, 278 P.3d 259, 260 (Cal. 2012) ("It has long been settled that the slightest entry by any part of the body or an instrument is sufficient [to constitute 'entry' for purposes of burglary under Cal. Pen. Code § 458]: 'As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand, is sufficient: as, to step over the threshold, to put a hand or a hook in at a window to draw out goods, or a pistol to demand one's money, are all of them burglarious entries.'" (quoting 4 Blackstone's Commentaries 227, fn. omitted)); *Commonwealth v. Cotto*, 752 N.E.2d 768, 772 (Mass. App. Ct. 2001) (holding that "an entry occurs when any part of the defendant's body, or an instrument which is used to commit the intended felony, crosses the threshold").

Indeed, in *Cotto*, the Massachusetts court distinguished between majority and minority views on the scope of "entry." A majority of jurisdictions hold that "an entry can occur if an instrument, 'being used to commit the felony intended,' passes the line of the threshold, regardless of whether the instrument was used in the breaking." *Cotto*, 752 N.E.2d at 771 (quoting 3 Torcia, Wharton's Criminal Law § 323 (15th ed. 1995); citing Nolan & Henry, Criminal Law § 403; Perkins & Boyce, Criminal Law 254 (3d ed. 1982) ("[W]here a tool or

other instrument is intruded, without any part of the person being within the house, it is an entry if the insertion was for the purpose of completing the felony but not if it was merely to accomplish a breaking"), and collecting cases). It noted that a "minority of jurisdictions hold that an entry can occur if any instrument, whether or not intended for use to commit a felony, crosses the threshold." *Id.* at 771–72 (citing cases from California, Maryland, and New Mexico). Tennessee appears to fall in the majority. *See Crow*, 517 S.W.2d at 754 ("Any penetration, however slight, of the space within the house by the defendant, or by any part of his body or by any instrument *inserted for the purpose of perpetrating a felony therein*, is a sufficient entry." (citation omitted; emphasis added)).

Because a majority of jurisdictions define "entry" for purposes of their burglary statutes at least as broadly as Tennessee does, it is axiomatic that the definition employed in Tennessee should satisfy the entry element required by the "generic" version of the crime. That conclusion is bolstered by the fact that, despite the breadth of the definitions of "entry" used by different jurisdictions around the country, none of the Supreme Court's or appellate courts' ACCA opinions considering whether a particular burglary constitutes an ACCA predicate has focused on the definition of "entry," even though it is well established that "breaking and entering" are elements of the generic form of burglary. Moreover, the *Taylor* Court, as the defendant points out, referenced the LaFave treatise repeatedly, *see Taylor*, 495 U.S. at 580 n.3, 588 n.4, 593, 598, for the common law definition of burglary and the modern expansions thereof, and even noted that most states have "expanded this definition to include entry without a 'breaking,'" *id.* at 593. It did not, however, reference LaFave's treatment of the term "entry" or highlight the differences between the majority and minority definitions of that term. Nor did the Court suggest a need to resort to the state's underlying common law definition of the term "entry," despite its reference

to LaFave's treatise. To the contrary, in fact. *See Taylor*, 495 U.S. at 593 ("The arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns.").) The court is, therefore, not persuaded by the defendant's argument.

Even if it were, as set forth above, the Sixth Circuit has already unambiguously determined that the Tennessee statute defining second-degree burglary in 1986 "was at least as narrow as the *Taylor* court's definition of generic burglary," that it "was a generic burglary statute," and, therefore, that conviction under Tennessee's second degree burglary statute "counts as a 'violent felony.'" *Jones*, 673 F.3d at 505. Under *Jones*, a conviction of second-degree burglary under Tennessee's pre-November 1989 statute qualifies as an ACCA predicate conviction. While the defendant may appeal to the Sixth Circuit to narrow or reconsider *Jones* in light of this argument, this court remains bound by *Jones*.

### B.      1986 Arson Conviction

In 1986, Buie was charged with aggravated arson—for "unlawfully, feloniously, willfully, and maliciously . . . set[ting] fire to the Lewis County Jail . . . , knowing, or reasonably should have known [sic], that one or more persons were present therein." (Doc. No. 24, at 13.) He pleaded guilty to arson, as distinct from aggravated arson, and was sentenced to three years' imprisonment.

The statute at the time defined aggravated arson as knowingly burning a building when the defendant knew or should have known that "one or more persons are present therein." Tenn. Code Ann. § 39-3-201 (1986). Aggravated arson triggered a minimum ten-year sentence. *Id.* On the other hand, "regular" arson, as Buie refers to it, provided that:

> Any person who willfully and maliciously sets fire to or burns, causes to be burned, or who aids, counsels or procures the burning of any house or outhouse, or any building, or any other structure, the property of himself or of another, shall be guilty of arson and shall be punished by confinement in the penitentiary for not

less than three (3) years nor more than twenty-one (21) years.

Tenn. Code Ann. § 39-3-202 (1982).

The Sixth Circuit has recognized that, while the ACCA specifically lists arson as a violent felony, "not every felony that a state labels as arson fits § 924(e)'s definition of arson." *United States v. Gatson*, 776 F.3d 405, 410 (6th Cir. 2015). The question is whether the offense as defined by the statute "comports with the 'generic, contemporary meaning' of arson." *Id.* at 410 (quoting *Taylor*, 495 U.S. at 598). The court held, "like every other court to consider the question," that "generic arson embraces 'the intentional or malicious burning of any property." *Id.* (quoting *United States v. Misleveck*, 735 F.3d 983, 988 (7th Cir. 2013)).

Based on an opinion from the District of Massachusetts that considered a conviction under an arson statute similar, but not identical, to Tennessee's, Buie argues that, insofar as the Tennessee statute permits conviction for merely "aiding, counseling or procuring the burning of a structure," it does not incorporate the element of intent or malice necessary to the "generic" arson definition and, therefore, does not qualify as a predicate offense for purposes of the ACCA.

In *United States v. Webb*, 217 F. Supp. 3d 381 (D. Mass. 2016), the district court considered, in the context of a § 2255 motion, whether a prior Massachusetts arson conviction qualified under the ACCA. The Massachusetts statute at issue defined the offense of arson as follows:

> Whoever wilfully and maliciously sets fire to, burns, or causes to be burned, or whoever aids, counsels or procures the burning of, a dwelling house, or a building adjoining or adjacent to a dwelling house, or a building by the burning whereof a dwelling house is burned, whether such dwelling house or other building is the property of himself or another and whether the same is occupied or unoccupied, shall be punished . . . .

*Webb*, 217 F. Supp. 3d at 397 (quoting Mass. Gen. Laws ch. 266, § 1). The court construed this statute as "encompass[ing] two theories of guilt": (1) willfully and maliciously setting fire to,

burning, or causing to be burned a dwelling; and (2) aiding, counseling or procuring the burning of a dwelling. The court construed the statute as indivisible and, applying *Taylor*'s categorical approach, found it to be "overbroad with respect to generic arson," because it permitted a conviction in the absence of malice or willfulness with respect to the actual burning:

> [T]he second theory of arson—the aiding, counseling, or procuring of the burning—does not mandate that the defendant acted "wilfully and maliciously," but requires some purpose and knowledge directed towards the acts of aiding, counseling, or procuring—not towards the actual burning. *See Commonwealth v. DeCicco*, 44 Mass. App. Ct. 111, 118, 688 N.E.2d 1010 (1998) ("[T]he Commonwealth [does not] have to prove that the defendant acted willfully or maliciously. . . . The assistance has to be purposeful. The person must know they are aiding, counseling, assisting, or advising the other person with respect to the burning of a building.").

*Id.* at 399. The court found that, "under the second theory of arson, this *mens rea* requirement is insufficient to be subsumed within the general arson *mens rea*, because Massachusetts does not necessarily require the prosecution to prove any particular state of mind with respect to the actual burning." *Id.* It therefore "remov[ed] [the petitioner's] conviction for arson in Massachusetts from the category of violent felonies under the ACCA." *Id.*

Buie argues that the same outcome is required under Tennessee's statute. The government argues, in response, that Tennessee's statute is not identical to Massachusetts' and that, even assuming the *Webb* court reached the correct conclusion under that statute, Tennessee's statute clearly requires willfulness and malice, even for the conviction of one who is charged with aiding, counseling, or procuring the burning in question. It argues that the Tennessee courts' construction of the statute substantiates its position.[2]

---

[2] The court notes a certain inconsistency in the government's position. On the one hand, it argues that the state courts' interpretation of the term "entering" is irrelevant for the purposes of determining whether the 1986 burglary statute qualifies as a generic burglary offense, since only the statute itself is relevant. (*See* Doc. No. 28, at 3 ("[T]he defendant cites no federal precedent that requires a sentencing court to examine and parse every word of a particular

The court agrees with the government that, although the Massachusetts and Tennessee statutes are very similar, the precise placement of the disjunctive "or" renders them completely different in effect, simply as a matter of grammar. The Massachusetts provision, as quoted above, contains an extra "or," which has the effect of making a distinction between the version of arson committed by a person who "willfully or maliciously sets fire to, burns, *or* causes to be burned" and the version of arson committed by a person who merely "aids, counsels or procures" the burning. Mass. Gen. Laws ch. 266, § 1 (emphasis added). By contrast, under the Tennessee statute, any person is guilty of arson who (1) willfully and maliciously (2) "sets fire to or burns, causes to be burned, *or* who aids, counsels or procures the burning" of (3) any house, outhouse, building, or structure. Tenn. Code Ann. § 39-3-202 (1982) (emphasis added).

Moreover, construing the "willfully and maliciously" requirement to modify the remainder of the provision is consistent with the Supreme Court's recognition that, "[i]n general, courts interpret criminal statutes to require that a defendant possess a *mens rea*, or guilty mind, as to every element of an offense. That is so even when the statute by its terms does not contain any demand of that kind. In such cases, courts read the statute against a background rule that the defendant must know each fact making his conduct illegal." *Torres v. Lynch*, 136 S. Ct. 1619, 1630–31 (2016) (internal quotation marks and citations omitted).

Finally, the Tennessee courts have clearly construed the statute as indivisible. *See, e.g.*, *State v. Bondurant*, No. 01C019606CC00236, 1998 WL 120291, at *34 (Tenn. Crim. App.

---

statute.").) On the other, it argues that the state courts' interpretation of the arson statute is relevant to whether the *mens rea* "willfully and maliciously" applies to all aspects or elements of the crime of "regular" arson. (*See id.* at 5 ("Moreover, this view – that a "willful and malicious" *mens rea* is a necessary predicate to any of the listed *actus reus* for an Arson conviction under the then-statute – is supported by Tennessee state courts' interpretation of that . . . statute.").)

March 18, 1998), *rev'd on other grounds*, 4 S.W.3d 662 (Tenn. 1999).[3] And they appear to require that arson by means of procurement also requires a *mens rea* of willfulness and malice. *See, e.g.*, *id.* (noting that the indictment "closely tracked the language" of the statute and that the jury was instructed that it could only convict if it found that the defendant had "set fire to, burned, caused to be burned, or aided, counseled, or procured the burning of the alleged property"); *State v. Thompson*, 549 S.W.2d 943, 944 (Tenn. 1977) (finding that the defendant was guilty of arson where she was charged with, and the jury found her guilty of, "willfully and maliciously" counseling and procuring the burning of a building); *see also Ricketts v. State*, 241 S.W.2d 604, 605 (Tenn. 1951) (holding, under an earlier but materially similar arson statute, that "the *corpus delicti* in a case of arson is not merely the burning of the house in question, but that it was burned by the wilful act of some person, and not as a result of natural or accidental cause").

In sum, the court finds that the version of the arson statute in effect in 1986 was indivisible, that the crime defined therein qualified as a "generic" arson, and, therefore, that the defendant's 1986 arson conviction was a predicate offense under the ACCA.

## C.    The Two 2001 Burglary Convictions

Buie's 1986 burglary and arson convictions, together with the manslaughter conviction, constitute the three requisite qualifying convictions for sentencing under the ACCA.

---

[3] The court in *Bondurant* rejected the defendant's argument that the state was required "to elect which set of facts it wishes to rely upon when it has charged a defendant with one offense but there is evidence of multiple, similar offenses." *Bondurant*, 1998 WL 120291, at *34. No such election was required in this case, the court stated, because "[t]he indictment alleges a single offense, and the proof reflects only a single act of arson. . . . It is true the arson statute . . . proscribes conduct through the use of alternative verbs, or theories of offending, but in Tennessee the need for election is not implicated by the statutory use of proscriptive terms in the disjunctive." *Id.*

Consequently, it is immaterial whether the 2001 burglary convictions count at all or whether they should be counted as one conviction rather than two. For purposes of completeness and in light of the possibility that the appellate court may disagree with the analysis above, the court will consider the defendant's remaining arguments.

### 1. Whether the Burglary Convictions Are ACCA Predicate Offenses

Buie was indicted in a multi-count indictment in 2000 or 2001.[4] Counts 3 and 4 of that Indictment charged him with "regular" burglary in violation of Tenn. Code Ann. § 39-14-402. The Corrected Judgments on Counts 3 and 4, however, reflect that he was actually convicted of violating § 39-14-403, which pertains to aggravated burglary. Buie argues that the judgments, rather than the indictments, are controlling and that his convictions for aggravated burglary are not qualifying convictions.

Section 39-14-402, in its current form and in 2000, provided as follows:

(a) A person commits burglary who, without the effective consent of the property owner:

(1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;

(2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;

---

[4] Buie's filing indicates that he meant to file as Exhibit 1 the records of "Count 3 Burglary 1st Degree Conviction," and, as Exhibit 2, the records for "Count 4 Burglary 1st Degree Conviction." (CM/ECF entry for Doc. No. 24 and exhibits.) Instead, Exhibit 1 consists of records of the 1986 arson conviction and, as such, is identical to Exhibit 4. Exhibit 2 consists of the Count 4 Indictment and Judgment dated March 29, 2001. The excerpt from the indictment filed by the defendant shows that he was indicted in the Lewis County, Tennessee Circuit Court on "Count 4" for burglary of a building under Tenn. Code Ann. § 39-14-402. (Doc. No. 24-2, at 1.) The government filed the Corrected Judgments for Counts 3 and 4, but the Count 3 Indictment is not in the record. The parties seem to agree that it is basically identical to the Count 4 Indictment.

(3) Enters a building and commits or attempts to commit a felony, theft or assault; or

(4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

. . . .

(c) Burglary under subdivision (a)(1), (2) or (3) is a Class D felony.

(d) Burglary under subdivision (a)(4) is a Class E felony.

The defendant concedes that § 39-14-402 is a divisible statute and that violation of § 39-14-402(a)(1) is a "generic" burglary that qualifies as an ACCA predicate. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (finding prior Tennessee convictions for burglary, as opposed to aggravated burglary, "do count toward a finding that [the defendant] is an armed career criminal"). Counts 3 and 4 of the Indictment specifically charged Buie with "unlawfully and feloniously" "enter[ing] a building which was not a habitation and not open to the public, without the effective consent of the owner . . . , with the intent to commit theft." (Doc. No. 24-2, at 1.) In other words, he was charged under § 39-14-402(a)(1), a Class D felony and a generic form of burglary.

However, the Corrected Judgments for both those counts show convictions for Class C "Burglary –1st Degree" (which did not actually exist in 2001) and identify the offenses to which the defendant was pleading guilty as "Burglary" in violation of Tenn. Code Ann. § 39-14-403. (Doc. No. 32-1.) Although the Corrected Judgments did not refer to "aggravated burglary," section 39-14-403 is the statutory provision defining aggravated burglary, and aggravated burglary is a Class C felony. *Id.* § 39-14-403(b). As noted above, the Sixth Circuit has found that Tennessee's aggravated burglary statute defines the offense more broadly than generic burglary and, therefore, that an aggravated burglary conviction under § 39-14-403 is not an ACCA

predicate. *Stitt*, 860 F.3d at 862.

In addition, Buie's sentences on these counts appear to be consistent with convictions for Class C felonies, corresponding with aggravated burglary, rather than Class D convictions, which would correspond with regular burglary. The Corrected Judgments differ from the originals in that they show that the defendant was sentenced as a Range I Standard Offender with 30% release eligibility. The defendant received a sentence of five years on each charge. (Doc. No. 32-1.) Tennessee law provides that a Range I sentence for a Class C felony is "not less than three (3) nor more than six (6) years." Tenn. Code Ann. § 40-35-112(a)(3) (2000). The sentence for a Class D felony committed by a Range I offender is not less than two nor more than four years. Tenn. Code Ann. § 40-35-112(a)(4) (2000). In other words, Buie's five-year sentences were outside the statutory range for a Range I offender convicted under § 39-14-402(a)(1), but appropriate for a Range I offender convicted of violating § 39-14-403. On this basis, Buie argues that the Corrected Judgments show that he was actually convicted of Class C felonies under Tenn. Code Ann. § 39-14-403, regardless of the fact that he was indicted under § 39-14-402.[5]

In response, the government argues only that the Corrected Judgments clearly indicate that the defendant was convicted of "burglary" (rather than "aggravated burglary") and that the references to § 39-14-403, "Burglary - 1st Degree," and "Class C" must all have simply been errors. The government filed the Judgments for Counts 1 and 2, entered at the same time as the original Judgments on Counts 3 and 4. These Judgments were clearly for "AGG. BURGLARY," and they show that the defendant was sentenced to 10 years on each count, as a Range II Multiple Offender. (Doc. No. 29-1, at 1–2.) In addition, the *original* Judgments on Counts 3 and

---

[5] He speculates that there may have been a superseding indictment that is presently unavailable or some irregularity in the original indictment.

4 reflected that the defendant was sentenced as a Range II Multiple Offender. Before becoming aware of the existence of the Corrected Judgments, the government argued that the 5-year sentences were appropriate for a Range II Multiple Offender convicted of burglary and that a 5-year sentence for aggravated burglary would have been too low for a Range II Multiple Offender. The sentencing range would have called for a sentence of 6 to 10 years. (Doc. No. 28, at 7 (citing Tenn. Code Ann. § 40-35-112(b)(3)).) In the Notice of Supplement filed with the Corrected Judgments, however, the government candidly acknowledges that this argument is "potentially undercut" by the fact that the Corrected Judgments show that the defendant was sentenced on Counts 3 and 4 as a Range I Standard Offender. (Doc. No. 32, at 1.)

The best and, in fact, *only* evidence of the defendants' 2001 convictions is the judgments themselves, and specifically the May 1, 2001 Corrected Judgments. The Corrected Judgments for Counts 3 and 4 unequivocally show that Buie was convicted of Class C "1st Degree" burglary under Tenn. Code Ann. § 39-14-403. Even though the judgments did not spell out "aggravated burglary," the aggravated burglary provision defines aggravated burglary as a Class C felony. *Id.* Burglary under § 39-14-402(a)(1) would have been a Class D felony. In addition, the sentence imposed fits that for a Class C felony for a Range I offender. Based on this evidence, the government cannot carry its burden of establishing that the burglary convictions from 2001 were for burglary rather than for aggravated burglary. Under *Stitt*, convictions for aggravated burglary do not constitute predicate offenses under the ACCA. The court finds that the 2001 burglary convictions do not qualify as ACCA predicates.

### 2.     *Whether They Would Count as One Conviction or Two*

The question of whether the 2001 burglary convictions would count as one predicate offense or two is immaterial, since neither qualifies. If they did qualify, they would have to be

counted as only one conviction.

The government has the burden of proving by a preponderance of the evidence that Buie committed the two offenses on "occasions different from one another." 18 U.S.C. § 924(e)(1); *see United States v. King*, 853 F.3d 267, 279 (6th Cir. 2017). The Sixth Circuit recently held that a district court tasked with determining whether a defendant's prior offenses were committed on different occasions is restricted to using only the evidentiary sources approved by *Taylor* and *Shepard*. *King*, 853 F.3d at 269. Further, however, to satisfy its burden of proving that two qualifying offenses occurred on different occasions, the government is restricted to *Shepard*-approved sources that contain facts—such as dates—that were previously established in a manner that satisfied the Sixth Amendment. *Accord United States v. Cash*, 306 F. Supp. 3d 1023, 1027 (E.D. Tenn. 2018). "[I]f the *Shepard*-approved documents before a district court are equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply." *Id.* (quoting *Kirkland v. United States*, 687 F.3d 878, 888–89 (7th Cir. 2012)).

The parties agree that the Indictments in this case charge different dates for Counts 3 and 4, and the Corrected Judgments themselves also include the dates of the offenses, purporting to show that one burglary took place in August 2001 and the other in September 2001. The indictment and the judgment technically fall within the *Shepard*-approved sources that a court can, under certain circumstances, consider for purposes of determining whether a conviction is an ACCA predicate. *See United States v. Patterson*, 878 F.3d 215, 219 (6th Cir. 2017) (finding that an "indictment and plea finding . . . [fell] squarely within the materials approved by *Shepard*); *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006) ("A judgment falls within *Shepard*'s exception for 'some comparable judicial record' to a plea colloquy or agreement, and therefore may be examined by a sentencing court."), *abrogated on other grounds*

*by Descamps v. United States*, 570 U.S. 254 (2013); *see also United States v. Sosa*, 448 F. App'x 605, 609 (6th Cir. 2012) (noting that "both a charging document and a judgment are the sorts of documents reviewable under *Shepard*").

Although the court can consider the Indictment and Corrected Judgments, that does not necessarily mean that these documents constitute sufficient proof that two offenses actually took place on separate occasions. Here, it is apparent that the defendant did not actually plead guilty to the charges as described in the indictments, since, as set forth above, the judgments reflect guilty pleas to aggravated burglary, rather than ordinary burglary as charged in the Indictment. Moreover, the court simply cannot tell from the judgments alone "whether the plea . . . 'necessarily' rested' on the facts at issue." *Patterson*, 878 F.3d at 219 (quoting *Shepard*, 544 U.S. at 21). Under Tennessee law, the offense dates are not an element of burglary or aggravated burglary. *See* Tenn. Code Ann. §§ 39-14-402, -403; *accord Cash*, 306 F. Supp. 3d at 1028 (noting that offense dates are not an element of aggravated robbery under Tennessee law). The judgments were not approved or signed by the defendant. There is no evidence that Buie assented to the dates during a plea colloquy or otherwise.[6] Accordingly, in large part because of the disconnect between the charges in the indictment and the charges of conviction, as well as the absence of a plea colloquy or any other permissible evidence establishing the dates on which the offenses were committed, there is nothing in the record establishing the dates in a manner conforming to the Sixth Amendment. At best, the available evidence is equivocal. *Accord Kirkland*, 687 F.3d at 888–89; *Cash*, 306 F. Supp. 3d at 1028.

---

[6] The government previously requested a continuance of the sentencing hearing to try to recover the audio recording of the plea colloquy of the plea in these cases. (*See* Doc. No. 28, at 6.) The government represents that it obtained the recording, but the quality of the recording is so poor that it is impossible to glean any probative facts from it. (*Id.*)

Thus, even if the 2001 burglaries could be considered ACCA predicates, they would count as one rather than two offenses, as the government cannot carry its burden of establishing that they occurred on different occasions.

**III.  Conclusion**

The 2001 burglary convictions do not qualify as ACCA predicates. However, because the 1986 convictions for arson and second-degree burglary both qualify as ACCA predicates, and the defendant concedes that the prior manslaughter conviction is a predicate, the defendant's objections to being sentenced under the ACCA are **OVERRULED**. The defendant is subject to the mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1).

It is so **ORDERED**.

ENTER this 30th day of October 2018.

_____

ALETA A. TRAUGER
United States District Judge